## Case No. 12,781.
### SHERWOOD v. SUTTON.
[5 Mason, 1.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1827.

SALE—FRAUDULENT MISREPRESENTATIONS — MEASURE OF DAMAGES—SHIPPING.

Case for a deceit in selling a vessel as a British vessel, she being in fact not British, or entitled to a British national character. It was *held*, that the plaintiff was entitled to damages to the extent of the difference of value of the vessel as sold, and her value, if her real character had been known, and also to damages to the amount of such repairs made on her, on the faith of the representation of her British character, as had not been remunerated by her earnings or in any other way.

[Cited in McAroy v. Wright, 25 Ind. 30; Morse v. Hutchins, 102 Mass. 440. Cited in brief in Moses v. Taylor, 6 Mackey, 261. Cited in Munson v. Hallowell. 26 Tex. 475; Whitney v. Allaire, 1 N. Y. 312.]

Case for fraud and deceit in the sale of a vessel. There were five counts in the declaration. The fifth, which was mainly relied on at the trial, was in substance as follows: That the defendant [Richard Sutton], on the 13th of October, 1816, at St. Barts in the West Indies, having procured a certain foreign vessel or brig, not British built, &c. nor having a British register, &c., and having fraudulently procured a certain colourable paper purporting to be a British register of said brig, therein called the Anna, and in said register representing and setting forth one William Hillyer as a British subject to be the sole owner of said brig, and having fraudulently obtained and caused to be executed a certain paper purporting to be a power or instrument of attorney from the said William Hillyer to the defendant to sell &c. the said brig as the property of .him the said William Hillyer. with the fraudulent contrivance to sell the said brig as such British vessel, &c., and having navigated her to Portland, with intent to defraud the plaintiff [Richard Sherwood] in the premises. at Portland, to wit. at Portsmouth, in the district of New Hampshire, being in possession of said vessel, the defendant, pretending to act by virtue of the said supposed power of attorney and to represent the said William Hillyer, on the 1st of March, 1817. in a certain conversation &c. concerning the sale of the said brig to the plaintiff, and in furtherance of his corrupt intent, then and there fraudulently represented to the plaintiff that the said brig was a true and proper British vessel, duly registered. &c., and entitled to the privileges thereof, and pretending to be the attorney of the said William Hillyer offered to sell to the plaintiff the same, as such

British vessel, and then and there represented to the plaintiff that she was such, in order to induce the plaintiff to become purchaser thereof; that the plaintiff, confiding in the representations so made, &c., did purchase the same for the sum of 1,500 dollars; and paid the said sum therefor, and received a conveyance of the said brig from the defendant, executed by him as such attorney of William Hillyer. The count then proceeded to negative that she was a British vessel, built or owned &c. and averred, that she was in fact a Spanish vessel, owned by the defendant, or by the defendant jointly with one Marwick, and that they were then and there both citizens of the United States; that the plaintiff was then and there a British subject; that the defendant well knew all the facts, and by reason of the fraud aforesaid, the plaintiff lost the benefit of such purchase of a British vessel in British trade and navigation, and all the freight accruing therein; and that the said vessel hath been wholly lost to him, and a cargo of lumber, &c., of the value of 10,000 dollars, and also large sums of money expended by him in repairs after the purchase thereof. The other counts averred among other things a condemnation of the vessel upon a seizure under the British laws for her not being a genuine British vessel, entitled to trade and navigate as such. There were other special averments as to her original character as a Spanish vessel. But as nothing particularly turned upon these counts they are omitted. The defendant pleaded (1) the general issue, not guilty; (2) the statute of limitations of New Hampshire, that the cause of action did not accrue within six years. Upon both pleas issue was joined. At the trial the following facts and circumstances were given in evidence.

In March, 1817, at Portland in Maine, a negotiation took place between the defendant and the plaintiff respecting the purchase of the brig in question, which was then called the Anna, and so appeared to be on the ship's papers. The defendant then represented to the plaintiff, that she was a British vessel, entitled to a British register, and belonging to one William Hillyer, a British subject, and that the defendant was authorized by him to sell her as such. He produced a letter of attorney from Hillyer, authorizing him to employ the vessel at his discretion, and also to sell her; and he also produced a certificate that the brig had entered and cleared at New York as a British vessel, and had conformed to the rules of the British consulate there. He further represented the brig to be the British brig Anna, which had been condemned as a prize of war in the British vice-admiralty court at Halifax and had subsequently been sold, and had lawfully received a British register, and was duly entitled to such register, as such prize vessel. The plaintiff also introduced evidence to prove that the brig was not in fact the British brig Anna, or any other British vessel;

---

1 [Reported by William P. Mason, Esq.]

but was a Spanish vessel, named the St. Antonio, and had been bought by the defendant, knowing her to be a Spanish vessel, and that at the time of the sale to the plaintiff, she really belonged to the defendant (who is an American citizen), and that Hillyer was a nominal, and not the real owner; that the defendant had procured for her a false register as the British brig Anna; that as a Spanish vessel at the time of the sale to the plaintiff, she was not worth more than 500 dollars; that the plaintiff upon the representations made by the defendant purchased her upon the faith of the truth of that representation for 1,500 dollars, and paid the price accordingly to the defendant, who executed a bill of sale of her to the plaintiff, as attorney of Hillyer; that the plaintiff was a British subject, and bought the vessel for the purpose of carrying on British trade and navigation. After the purchase, the plaintiff repaired the brig at Portland at a large expense. about 1,900 dollars, she being found upon examination very much out of repair and in a bad and defective state. After those repairs were made, the brig, if really British, would have been worth in the West Indies 5,000 or 6,000 dollars; but as a Spanish vessel not more than 500 dollars. The brig, after being repaired, was employed by the plaintiff about two years in trade between the West Indies and the United States as a British vessel, and was subsequently seized and condemned by the British authorities in the West Indies; but the sentence of condemnation did not state the particular cause of condemnation. There was also evidence to prove, that the plaintiff did not know. that the vessel was not British until within six years next before the commencement of the suit, which was left to the jury; and also to prove, that the defendant was the true and real owner of the vessel, and Hillyer only nominal owner, and that the name of Hillyer was kept in the ship's papers to preserve an ostensible British ownership, and entitle the brig to trade as a British vessel; and that the defendant wilfully and fraudulently made the representations at the time of the sale. with a view to induce the plaintiff to make the purchase; and that if he had known or suspected her to be Spanish, he would not have purchased her, his sole object being to employ her in British West India trade. There was also evidence in the case. that on the first voyage, which the brig made from Portland to Jamaica after being repaired, the plaintiff felt uneasy on account of the papers of the brig; that he procured a new register and other papers at Jamaica for her, as a British vessel, and then said, "he felt safe." But the particular cause of the plaintiff's uneasiness did not appear in proof; but circumstances only conducing to prove, that it arose from difficulties made at the custom-house at Jamaica on account of the repairs of the vessel at Portland. Long before the sale to the plaintiff, viz. in October 1816, the defendant had employed a carpenter at Portland to grave and caulk the brig. He commenced caulking and cutting her, and worked six days upon her, and, as far as she was opened, she was found to be in so bad and defective. a state, that she was deemed by him not worth repairing. She was then removed to a cove, and was farther opened, and was in a situation to be examined by any person. The statute of 26 Geo. III. c. 60, was cited from Abb. Shipp., to show that the repairs of 1,900 dollars on her, under such circumstances, were sufficient to deprive the vessel of her British character.

Mr. Saltonstall, for defendant, contended, that the four first counts were not proved, for there was no proof of any condemnation or seizure for the cause asserted in these counts. Then as to the fifth count it is not proved. The material averments in it are, that the vessel was Spanish, and that the defendant, and not Hillyer, was owner of her. These facts are not established by any competent evidence. The proof, so far as it goes, is, that Hillyer was owner, and so was represented by the defendant. The bill of sale was made to the plaintiff by the defendant as attorney of Hillyer. Again: The plaintiff has sustained no damage. The vessel has been condemned, it is true. but non constat for what cause. It may have been for a totally different cause, and illegal proceeding on the part of the plaintiff. She was successfully employed by him for two years after the purchase in trade as a British vessel. Besides, the repairs of the vessel at Portland after the sale were so great, that they would per se deprive her of her British character by the British registry act (26 Geo. III. c. 60, § 2). Abb. Shipp. 39. So, that in fact she has lost her British character by his own illegal act and trade. The plaintiff must, from the circumstances. have known the real character and history of the vessel as well as the defendant at the time of the sale. It is not reasonable to presume his ignorance of it. Then, as to the statute of limitations. there is no proof of any concealment, much less of a fraudulent concealment by the defendant. And we deny that any such concealment, if fraudulent, is a good answer to the plea. Troup v. Smith's Ex'rs, 20 Johns. 33; 3 Barn. & Ald. 288.

Mason & Cutts, for plaintiff, contended è contra. Here was a fraudulent misrepresentation. The vessel was represented to be British; she was not so. and the defendant knew the fact. We rely mainly on the fifth count. The gist of our action is the false affirmation, that the vessel was British, and not the particular ownership. But the defendant was the real owner. All the acts of the parties, and the circumstances of the case prove it. Hillyer was merely a nominal owner; and so stated in the papers because it was necessary. that a British subject should appear as the owner. The defendant is an

American citizen. The plaintiff could not at the time of the purchase have known that the vessel was Spanish. As such she could not have been worth 1,500 dollars at that time. So is the proof. He bought her as a British vessel for British trade. As to the repairs forfeiting the British character of a real British vessel, that is nothing to us. It is no part of our case. This is not a real British vessel. The fraud upon us was complete at the time of the sale, and the subsequent repairs furnish no excuse from damages for the fraud. As to the statute of limitations, there is no pretence of any discovery of the fraud by the plaintiff until within six years. He had no means of discovering it; as soon as he did, he brought his action. The defendant has not proved, that he ever made it known to any person, who could have told us, or given any public information.

STORY, Circuit Justice (charging jury). Upon the issue joined between the parties upon the statute of limitations, the real question is, whether the fraud of the plaintiff alleged in the declaration was concealed by the defendant, so that it never came to the knowledge of the plaintiff until within six years before the commencement of this suit. There is no pretence, that either Hillyer, or the defendant himself, ever communicated the facts to the plaintiff, or to any other persons, so that they could be publickly known or communicated to the plaintiff at an earlier period. Under such circumstances the jury must draw their own conclusions from the natural presumptions arising from the facts in evidence and the situation of the parties, and find their verdict accordingly. It is not controverted, that this vessel was in fact the Spanish brig Antonio; and was not a British vessel. The defendant has not attempted to maintain, that she was the British brig Anna, or bona fide entitled to use the British register belonging to that vessel. If then the jury are satisfied, that the register used for the brig Antonio, though genuine, belonged to the British brig Anna, and that the defendant at the time of the sale to the plaintiff knew the fraud, and was a party to it, and also knew, that the brig Antonio was a Spanish vessel, it seems to me, that the averments in the declaration, negativing the British, and averring the Spanish character of the brig, are completely made out. But it is said, that the repairs made at Portland were such, that if the brig had possessed a genuine British character, she would, by the British registry acts have forfeited her national character; and if she afterwards sailed under her register, she was liable to seizure and condemnation therefor. And I am called upon to state, that if the repairs so made exceeded fifteen shillings a ton, these repairs did in fact destroy her national character. I cannot give such an instruction to the jury, for several reasons. In the first place, there are not sufficient facts established in the case to enable the court to say, that such would be the necessary effect of the repairs in the present case under the British registry acts. If this had been a real British vessel, and the repairs were no more than were necessary to enable her to return to a British port, and prosecute her voyage thither; and if the necessity for such repairs had arisen since her last departure from a British port, it is by no means clear to my mind, that the case would not be fairly within the reach of the exceptions of the British registry acts, as they have been read at the bar from Mr. Abbott's treatise on the Law of Shipping. As far as my recollection goes, the British courts have been disposed to put an indulgent construction upon those acts in cases, where there has been a clear necessity for the repairs to prosecute the voyage. Now the evidence does not show in particular when, or how, or under what circumstances, or at what time the necessity for these repairs arose. The plaintiff was not privy to her former history, and cannot be presumed to be acquainted with facts occurring previous to his purchase. Nor has it been established in proof, that if the brig had been bona fide British, she would in fact have lost her national character by these repairs. There is no evidence, that she has been seized or decreed to be forfeited on this account. It is admitted, that upon her return to Jamaica after these repairs, she was allowed upon the change of ownership to receive a new register at that port, as a British vessel; and though there seems to have been some hesitation or difficulty about the matter, the final decision affords some presumption, that the repairs (great as they were) were not deemed ipso facto to destroy her British privileges and character. But this point is the less material, because, however the case might be as to a real British vessel, if this brig had not that character, the repairs could not bar the plaintiff's right of recovery. She is not proved to have been seized or condemned on account of these repairs; and the injury done to the plaintiff by the fraudulent misrepresentation of the defendant gave him a complete title to an action for damages.

The right of action then being complete by the fraudulent misrepresentation (if sufficiently proved), independently of any subsequent events; the next question is, what damages the plaintiff is entitled to recover. My opinion is, that he ought to recover to the extent of the actual injury sustained by him. The true rule of damages in cases of this nature is, to allow the difference between the value of the vessel, if her real character had been known, and the price, at which she was bought under the faith of her being a vessel entitled bona fide to the privileges and benefits of such a British character. To this extent at least he has sustained a loss. Now it is in proof, that as a Spanish vessel, at the time of the pur-

chase, she was not worth more than 500 dollars, that is, than the value of her materials, if she were broken up. As a British vessel she was worth 1,500 dollars; and on the faith of the representation made of her possessing such character, the plaintiff gave that sum for her. The difference between these sums is a loss actually sustained by the plaintiff, for he had paid 1,000 dollars more for the vessel than she was worth, and that upon a false representation of the defendant. But it farther appears, that upon the faith of this representation the plaintiff went on and expended about 1,900 dollars in repairs; and I am of opinion, that of this sum the jury are at liberty to allow the plaintiff such portion as they deem reasonable to remunerate any loss, for which the plaintiff has not received any indemnity or compensation by the subsequent earnings of the ship or otherwise. For the loss was a direct consequence of the fraudulent representation.

It has been argued, that the plaintiff ought not to recover any more than nominal damages, because the condemnation may have been caused by the amount of the repairs. But I am of a different opinion. In the first place, as has been already observed, there is no sufficient proof of the real cause of the condemnation. In the next place, if the averments in the declaration are proved, the plaintiff has manifestly sustained more than a nominal damage. He has at least paid 1,500 dollars for what was worth no more than 500 dollars; and this by the fraud of the defendant. What answer to him could it be to say, I have cheated you out of 1,000 dollars, and because you have lost the vessel by another cause, I am entitled to retain the money? There appears to me to be sufficient evidence (if believed) to show, that the plaintiff has sustained more than nominal damages; and the jury are bound to allow him such as in their judgment he has sustained in consequence of the fraud.

Verdict for the plaintiff, $4,364.50.

NOTE. A bill of exceptions was filed, and a motion made in arrest of judgment, which was argued at May term, 1828, and decided at October term, 1828. [Case No. 12,782.]