## WHITNEY vs. ALLAIRE.

Where one conveys or leases to another his right in real estate, an action will lie for a fraudulent representation as to the territorial extent of such right.

And in such a case the proper measure of damages in favor of the lessee, is the sum which in good faith he is obliged to pay to a third person to obtain what the lease would have given him if the representation had been true.

A demise for a term commencing *in futuro*, passes a present interest in the term to the lessee.

And the lessee by taking possession at the commencement of the term, and after having discovered the fraud, waives thereby only his right to rescind the contract, but not his right to recover the damages occasioned by the fraud. .

The defendant, in February, executed to the plaintiff a writing under seal, stating that he had hired of the plaintiff a certain.water lot and his right to a wharf in the city of New-York, for one year from the first of May next, at $1000 rent. He was induced to make the contract through the fraudulent representations of the plaintiff, that the right mentioned in the lease comprehended a parcel of land which in fact belonged to the corporation of the city of New-York. The defendant discovered the fraud before the first of May, and obtained from the corporation a lease for that parcel at an annual rent of $1000. On the first of May he took posses sion of the whole and occupied during the year. In covenant for the rent; *held*, that he was entitled to a deduction by reason of the fraud, of the sum which he was obliged in good faith to pay for the corporation lease.

VOL. I.                    39

*It seems,* that an action will lie for a fraudulent representation by which a party is induced to enter into a contract which is executory merely. *Per* GARDINER, J.

*It seems* also, that where one conveys or leases real estate, an action will lie for a fraudulent representation *as to the title.*

WHITNEY sued Allaire in covenant for rent, in the superior court of the city of New-York. On the first trial, the charge of the court upon the question raised was favorable to the plaintiff, and a verdict was had and judgment rendered for the amount of rent claimed. That judgment was reversed by the supreme court, on error brought, and a new trial ordered. (*See* 1 *Hill,* 484.) On another trial, the verdict and judgment of the superior court were in favor of the defendant. The plaintiff, having made a bill of exceptions, brought error into the supreme court, where the judgment was affirmed. The plaintiff brings error into this court.

The case, as it appeared on the last trial, was this: The plaintiff claimed to recover upon an instrument duly signed and sealed by the defendant, in these words: " I have this day hired of Stephen Whitney the water lot, and his right to the wharf on the east side of Market-slip, for one year from the 1st of May next, at the yearly rent of $1000 and taxes on said water lot, whatever it may be, the rent to be paid quarterly. 9th February, 1837."

After the plaintiff had rested, the defendant called Richard C. White, who had been sworn for the plaintiff, and offered to prove the representations made by the plaintiff to the witness, (who was the general agent of the defendant) respecting *the extent of his right* in the wharf on the east side of Market-slip, previous to the signing of the above memorandum. The evidence was objected to by the plaintiff's counsel, the objection overruled, and an exception taken to the decision.

The defendant then gave evidence tending to show that he was induced to sign the memorandum through a fraudulent representation of Whitney, that the right which was mentioned in the lease comprehended a certain other parcel of land which turned out to belong to the corporation of the city of New-York; that Allaire discovered the fraud *before the term commenced.*

and that in order to secure the parcel of land owned by the corporation, and which was necessary for the business of the defendant, the latter was under the necessity of taking a lease thereof from the corporation, at an annual rent of $1000.

White, the witness above mentioned, after testifying to the conversation which occurred between him and the plaintiff prior to the signing of the memorandum by the defendant, stated that *the plaintiff told him that the wharf on the east side of Market-slip was his, and from this, witness supposed it was his, and so informed the defendant.* This testimony was received without objection. The plaintiff's counsel then examined the witness, and the defendant on further examination proposed to ask the witness the following question : " What did you understand, at the time of the said conversation, from the statement of the plaintiff, that you did hire from him ?" The counsel for the plaintiff objected to the question, the objection was overruled, and the plaintiff excepted.

The judge charged the jury that to defeat the right of the plaintiff to recover, the defendant must prove that the plaintiff had been guilty of fraud, and not that there had been a mistake or misconception upon the part of the defendant ; that the plaintiff must have intended to mislead or entrap the defendant. That although the defendant, after the discovery of the extent of the plaintiff's interest in the wharf in question, had entered into the possession thereof and enjoyed the use of the same for the term specified, without rescinding or offering to rescind the contract, yet he had a right to set up any fraudulent representations or concealment of the plaintiff, in respect to said contract, in bar of his claim for the rent or in reduction of the amount of such claim ; that if the jury should find that a fraud had been committed by the plaintiff, in adjusting the matter, the court would lay down the rule, that the jury should consider what would have been a fair rent of the 150 feet of the wharf owned by the plaintiff; to this sum should be added the three quarters rent due, and taxes claimed in the declaration, and from that should be deducted the $1000 paid to the corporation, if they were satisfied that the same was a reasonable

amount, and was agreed to be paid by the defendant in good faith, without any intent to defraud the plaintiff. The counsel of the plaintiff excepted to the whole and each part of the charge, and the jury returned a verdict for the defendant.

*E. Sandford,* for plaintiff in error.

*F. B. Cutting,* for defendant in error.

GARDINER, J. The first exception to the admissibility of *any evidence* to establish the fraud, is sought to be sustained upon two grounds: 1. That the fraud relates to the title to lands. 2. Because the matters given in evidence are not embraced within the lease; *as the plaintiff did not demise the wharf,* but expressly limited it to his *right* to the wharf.

For more than thirty years it has been the settled doctrine of the courts of this state, that fraudulent representations in reference to the title of real estate, accompanied with damage, is a good ground of action, and that it is immaterial whether any or what covenants are contained in the deed of conveyance. This was held in *Wardell* v. *Fosdick,* (13 *John.* 325,) where the defendant fraudulently sold without any title, but in effect with full covenants. In *Monell* v. *Colden,* (13 *John.* 402, 3,) the representation was that the vendor, as riparian owner, had the pre-emptive right to a grant of land under water in the Hudson river, and opposite the purchased premises. In *Ward* v. *Wiman,* (17 *Wend.* 193,) the declaration was that the premises were free from incumbrance, and an action for the fraud was sustained although the deed contained a covenant to the same effect. In *Culver* v. *Avery,* (7 *Wend.* 386,) the affirmation was that the premises were clear of any other incumbrance than the mortgage under which the sale was effected, and that the purchaser would acquire a perfect title. In the first case cited, the fraud pertained to the title of the land conveyed. In the second, to a privilege annexed to the land; in the third, to an incumbrance upon the title; and in the last, both to the title

and to incumbrances. Such has been the adjudication of our state during the period mentioned.

The distinction between representations as to the title to land, and matters collateral to the land, was taken in *Culver* v. *Avery*, and repudiated, (7 *Wend.* 386,) and I think with reason. There is no middle ground of principle, between excluding evidence of fraudulent representations in all cases of the conveyance of land, or admitting them when they refer to the title. They all are or may be equally obnoxious to objections arising from the statute of frauds, and in each case the vendee can protect himself by appropriate covenants. The rule thus settled, affecting as it does the right of property, should be upheld unless its maintenance would conflict with established principles. No such conflict is perceived. On the contrary, it harmonizes with the law in relation to personal property, requires fair dealing from the vendor in each case, and permits the vendee, without a penalty upon his credulity, to trust to declarations of material facts within the knowledge of the other party. In a word, to treat with the vendor upon the presumption that he is an honest man.

2. There is no force in the objection that the plaintiff did not demise the wharf, but only his *right* to the wharf, and therefore the representation did not relate to a matter within the lease. The question in all these cases is not what passed by the conveyance, but what would have passed to the vendee, had the representations been true. The plaintiff fraudulently represented himself as the owner of three hundred feet of wharf, and the defendant would have acquired that quantity by his lease, had the statement been true. The lessor, however, knew at the time that he was the owner of one hundred and fifty feet only, and the falsehood as to the extent of his right, was at once the inducement to the contract, and the reason why it was inoperative. (*Monell* v. *Colden*, *supra; Dobell* v. *Stevens*, 3 *Barn. & Cress.* 623.)

The question put to White, as to his understanding of the extent of the plaintiff's interest from his statement to him, was objectionable; but it could not have affected the verdict of the

jury. The witness had previously sworn, without any objection, " that the plaintiff told him that the wharf on the east side of Market-slip was his, and *from this, witness supposed* that the wharf was his, and so informed the defendant." His " understanding," derived from the plaintiff's statement, was therefore a part of the evidence before the jury, and its repetition could not have affected the plaintiff injuriously.

A more important question arises under the exception to that part of the charge in which the jury were told that the discovery of the fraud, and the *subsequent entry* of the defendant upon and the *enjoyment of the demised premises,* would not bar his right to damages.

In support of this exception it was argued, 1st. That until the discovery of the fraud, the defendant was not *bound* by the memorandum signed by him, and then only at his election : that prior to his adoption, the writing was in the nature of a *proposition,* and being adopted with a full knowledge of all the material ·facts, there could be no *fraud,* because no *deception* when the contract had its *inception.*

This hypothesis is rather specious than solid. The agreement when executed was binding upon both parties, and could be repudiated by neither without the assent of the other, except by an action. If the defendant had discovered the fraud the day after the contract was made, he could have no relief short of a court of equity. In the mean time he would lose the advantage of a sale of his interest, would be in form legally responsible on his covenant, and subject to the doubtful chances of a litigation as the only means of reinstating himself in his former position. He made, as he had a right to suppose, an advantageous bargain, when in truth he had only purchased a lawsuit as a means of deliverance from a bad one. Now the very gist of the fraud consists in placing a man in this situation. It was an injury for which the supreme court have adjudged an action would lie, when the contract was consummated. I see no reason to doubt the correctness of their conclusion. Every one must perceive the distinction between a mere proposition, and an agreement requiring an action to avoid it ; between the

Whitney *v.* Allaire.

right to annul a contract by the mere volition of one of the parties, and a right to resort to a court of justice for the same purpose.

In the second place, it was insisted that if there was an agreement, it was executory when the fraud was discovered ; and in such a case, whatever might be the rule as to contracts wholly or partially executed, the defendant, if he affirmed the contract, waived all right to damage for the fraud. In the first place, the contract was not executory, if by that is meant that until entry, the lease was a chose in action. A lease to commence *in futuro* is grantable. (*Shep. Touch.* 241.) The interest vests presently, although it does not take effect in possession until a future time. (*Comyn's Dig. tit. Assignment ; Taylor's Land. and Ten.* 207.) The defendant, therefore, upon delivery of the lease, acquired an interest in the term which he could assign, and for which he could maintain ejectment without any further act upon his part, if possession was withheld after his right of entry became complete. (*Taylor's Land. and Ten.* 132 ; *Adams on Eject. 2d ed.* 33, 161.) The interest of the defendant cannot be distinguished from the sale of a chattel to be delivered at a future period, to be paid for subsequent to delivery. The property would pass by the contract of sale, and replevin might be maintained by the purchaser after the time stipulated for the delivery. (2 *Sumn. R.* 211.) But if the agreement was executory, it would not, it is believed, change the right of the parties. It is conceded that if the contract had been partly executed, even in the most trifling particular, the defendant would have the right to rescind and bring his action for the deceit, or affirm the contract and have his remedy by way of recoupment when sued for the rent. Why should he not have the same remedies when the contract is executory ? In neither case, according to the assumption of the plaintiff, could there be a contract until ratified with a knowledge of the fraud. And if an adoption under such circumstances, of the agreement, is an abandonment by the person defrauded, of his claim to damages for the deceit in the one case, it must be in both. In neither will repudiation of the contract alone, as I have attempted to

show, relieve the party defrauded from his responsibility, and restore him to his rights as they existed prior to the agreement. No such distinction is recognized by the authorities. It is true, that if a party affirms a contract with knowledge of the fraud, he affirms it wholly, and this whether it is executory, or partially executed. But in neither case does he affirm it as a contract made in good faith. He consents to be bound by the provisions of the agreement, but does not thereby release or waive his claim for damages arising from a fraud collateral to the agreement. The case 5 *Mees. & Wels. R.* 83, is consistent with this doctrine, and the cases referred to in the opinion of the supreme court cannot otherwise be reconciled with each other or first principles.

The last question relates to the damages. The rule given to the jury was as favorable as the plaintiff had a right to require. The measure of damages in an action upon a warranty, and for fraud in the sale of personal property, are the same. In either case they are determined by the difference in value between the article sold, and what it should be according to the warranty or representation. (*Sherwood* v. *Sutton,* 5 *Mason,* 1; *Clare* v. *Maynard,* 6 *Adol. & Ellis,* 519; 4 *Hill,* 625.) The same rule obtains, I apprehend, upon the sale of real estate, where the action is for deceit; although a different one is applied when the suit is brought upon a certain class of covenants, such as that of warranty, quiet enjoyment, seisin, &c. which is founded upon considerations of public policy, without reference to the actual damages sustained by the party.

In 13 *John.* 395, *supra,* it was held that the defendant was chargeable with *all the damages* resulting from the false representations. In *Van Epps* v. *Harrison,* (5 *Hill,* 69,) this rule was applied to an action upon a bond given for the purchase money of land, and where the defendant was suffered to recoup damages on occasion of the fraud of the vendor. Bronson, J. remarks, that the jury must inquire how much *less* the land was worth for building purposes than it would have been had the representations of the vendor been true.

This rule of compensation is founded upon sound principles of

morality. It compels the fraudulent vendor to make good the representations, upon the faith of which the vendee entered into the contract. This is but just. Applied to this case, it will at least justify the charge, and the verdict of the jury. The judgment should be affirmed.

BRONSON, J. It is not necessary in this case to decide, whether an action will lie for a false and fraudulent representation by the vendor of real estate that he has title to the property; for that question seems not to have been made on the trial. And besides, the representation of which the defendant complains related to the extent of the demised premises, rather than the landlord's title to the property. The conveyance was of all the plaintiff's right to a wharf, without specifying its boundary or extent; and the complaint is, that the plaintiff said he owned the whole wharf, which is three hundred feet in' length, when in truth he owned only one half of it.

Actions have been sustained where the deceit was in relation to some collateral thing, as the rents or other profits derived from the land, things appurtenant to it, the incumbrances upon it, the location, quality or condition of the land, what the vendor paid for it, and the like. (*Ekins* v. *Tresham*, 1 *Lev.* 102; 1. *Keb.* 510, 518, 522, *S. C.*, by the name of *Leakins* v. *Clizard*; *Lysney* v. *Selby*, 2 *Ld. Raym.* 1118; 1 *Salk.* 211, *S. C.*, by the name of *Risney* v. *Selby*; *Dobell* v. *Stevens*, 3 *B. & C.* 623; *Bowring* v. *Stevens*, 2 *C. & P.* 337; *Pilmore* v. *Hood*, 5 *Bing. N. C.* 97; *Holbrook* v. *Burt*, 22 *Pick.* 546; *Monell* v. *Colden*, 13 *John.* 395; *Culver* v. *Avery*, 7 *Wend.* 380; *Ward* v. *Wiman*, 17 *id.* 193; *Early* v. *Garret*, 9 *B. & C.* 928; *Sandford* v. *Handy*, 23 *Wend.* 260; *Van Epps* v. *Harrison*, 5 *Hill*, 63.) Some of these cases are open to observation; but it is enough for the present to say, that in none of them was the false representation upon the naked fact of title. In *Wardell* v. *Fosdick*, (13 *John.* 325,) the defendants fraudulently sold and conveyed land which had no real existence; and it was held that the purchaser might treat the deed as a nullity, and have an action on the case for the deceit. In

*Bostwick* v. *Lewis*, (1 *Day*, 250,) there was a combination to defraud the purchaser in relation to the *quality* of the land, as well as the title to it; and it may fairly be inferred from the report, that the recovery was on the ground of fraud in relation to the quality alone. Although evidence was given that the title to a part of the property was out of the vendor, it was admitted for the sole purpose of showing that the residue of the tract was of no value. In *Wade* v. *Thurman*, (2 *Bibb*, 583,) it was held that the vendee might have an action against the vendor for falsely representing that the title to the land was in a *third person, who would convey at any time.* If this case does not go too far to prove any thing, it is sufficient to say that it is not the case of a fraudulent representation by the vendor of title in himself; and I do not find that such an action has ever been maintained. The learned judge who delivered the opinion of the court in *Leonard* v. *Pitney*, (5 *Wend.* 30,) evidently thought that such an action would not lie; and the case of *Roswell* v. *Vaughan*, (*Cro.Jac.* 196,) as understood by Lord Holt and Powell, J. in *Lysney* v. *Selby*, (2 *Ld. Raym.* 1119,) tends to the same conclusion. It is a strong argument against the action that no precedent for it has been found.

In the usual course of business men insert covenants in their conveyances of real estate where it is intended that the vendor shall answer for the goodness of the title; and it is easy to see that bad consequences may follow if the vendee shall be allowed to lay aside his deed, and have an action founded upon conversations about the title pending the bargain. In *Dobell* v. *Stevens*, (3 *B. & C.* 623,) where the vendee of a public house was allowed to recover in an action for the deceitful representations of the vendor in relation to the amount of business done in the house, Chief Justice Abbott said, the representation was not of any matter or quality pertaining to the thing sold, and therefore likely to be mentioned in the conveyance, but was altogether collateral to it; as was the rent in the case of *Lisney* v. *Selby*. And in *Monell* v. *Colden*, (13 *John.* 403,) Thompson, Ch. J. remarked, that the false representation was not respecting any thing to be included in the deed, but with

Whitney v. Allaire.

respect to a privilege which the plaintiffs were to acquire in consequence of owning the land on the shore adjoining the river. The intimation in both of these cases is, that had the fraud related to the title, or any thing else which is usually provided for in the conveyance, the action could not have been maintained.

I do not intend to express a definitive opinion on the point; and have only said enough to show that it is a grave question, which, as it is not necessarily before us, should not be regarded as settled by our decision.

A present interest in the term passed by the lease: (*Allaire* v. *Whitney*, 1 *Hill*, 484:) and as the contract was not wholly executory when the defendant discovered the fraud, the question which was considered in *The Saratoga R. R. Co.* v. *Row*, (24 *Wend.* 74,) does not arise.

The defendant called his agent, White, as a witness, who gave the conversation between himself and the plaintiff about hiring the wharf; the defendant was then allowed to ask him what he understood from the statement made by the plaintiff on that occasion; and the witness answered that he understood from the conversation that the plaintiff owned the whole wharf from Water-street to the end of the pier. The plaintiff was not answerable for the manner in which the witness understood the conversation, unless he had a right so to understand it; and how it should be understood was a question for the jury. It was for them, and not the witness, to draw the proper inference from what the plaintiff said. I see no principle on which the evidence could be properly received; and on that ground I think the judgment should be reversed, and a venire de novo be awarded.

WRIGHT, J. was also for reversal on the same ground; but on the other questions he concurred with GARDINER, J.

JONES, J. orally delivered an opinion for reversal on the same ground with BRONSON, J.; also on the ground that the defendant, by taking and enjoying the possession after the discovery

of the alleged fraud, had elected to affirm the contract, and therefore had no legal cause of complaint. He also thought the rule of damages was improperly laid down at the trial.

GRAY, J. concurred with JONES, J.

JEWETT, C. J., RUGGLES, J. and JOHNSON, J. concurred in the opinion of GARDINER, J.

Judgment affirmed.