Nov. Term,
1847.

HUMPHREYS
v.
COMLINE.

A. *Kinney*, S. B. *Gookins*, and R. W. *Thompson*, for the plaintiff.

J. P. *Usher* and W. D. *Griswold*, for the defendant.

## HUMPHREYS v. COMLINE.

The oral affirmation of a person as to the quality of an article sold by him, where the buyer had an opportunity of inspection, is not a warranty unless it be so intended by the parties.

And whether such affirmation was intended to be a warranty depends on the proof, and is a question for the jury.

A cause having been tried by the Court, under the statute, stands as if it had been tried by a jury.

And if the judgment of the Court in such case, on the weight of evidence, be not clearly wrong, it will not be reversed.

Although such an affirmation as that mentioned above be false, it will not be considered fraudulent unless it was known to be false by the party making it.

In the sale of molasses in barrels at the market-price to a grocer to retail, where the quality of the molasses is not examined (the barrels being present at the sale), there is no implied warranty that the molasses is fit for the purpose for which it is purchased.

*Wednesday,*
*December 1.*

ERROR to the *Jefferson* Circuit Court.

SMITH, J.—Debt upon a note for 29 dollars and 93 cents, made by *Humphreys* and payable to *Comline* or order sixty days after date. Plea, the general issue, and cause submitted to the Court for trial without the intervention of a jury. Finding and judgment for the plaintiff for the amount of the note, &c.

The evidence adduced upon the trial is contained in a bill of exceptions. It appears that the note was given for the price of two barrels of molasses, purchased by *Humphreys* of *Comline*, at 35 and 38 cents per gallon, which was the market-price at that time. *Humphreys* was a grocer and purchased the article to sell at retail. There was no inspection of the molasses at the time of the sale. The barrels were brought by *Comline* to the store of *Humphreys*, and looked as if they had not been opened since the molasses had been first put into them. *Humphreys* proposed to gauge the barrels to ascertain the number of gallons, and *Comline* agreed to take off two gallons from the marked quantity and waive the

gauging.  The latter, when the molasses was delivered, said
it was good.  It turned out that the molasses was unfit for
table use and almost worthless.  Several persons who had
bought of it returned the quantities purchased by them to
*Humphreys.  Comline* did not reside at *Madison* where
*Humphreys's* store was situated; and when he called to pro-
cure payment of the note, *Humphreys* told him that the mo-
lasses was not good,—that he had sold some of it and was
obliged to take it back,—that the molasses was in his cellar,
and that if it was not taken away he would charge him (*Com-
line*) storage for it.  *Comline* then said he had sold some of the
same molasses to another person, and had made a deduction
in the price.  He offered to take the value of the note in
trade.  *Humphreys* replied that he did not want the molasses,
and requested *Comline* to take it away.  The latter refused
to do so and said he would bring suit upon the note.

It is contended on behalf of the plaintiff in error, that
these facts show there was an express warranty accompany-
ing the sale, that the molasses was good; or that if the repre-
sentations of *Comline* did not amount to an express warranty,
under all the circumstances attending the transaction, the law
raises an implied warranty that the article was reasonably fit
for the purpose for which it was purchased. ·

An oral affirmation of the quality of an article which the
purchaser has an opportunity of examining, cannot be con-
sidered a warranty unless it is so intended at the time; and
where there is no warranty *in terms*, if by the language used
a warranty is intended that intention must be proved.  *House*
v. *Fort*, 4 Blackf. 293.  It is to be observed in reference to
this point, that when there is any doubt whether statements,
made at the time of entering into a contract, were intended
to express an opinion or belief only, or as assertions upon
which it was intended that the other party should rely as a
warranty, the question thus raised properly belongs to the
jury.  *Ibid.*—*Morrill* v. *Wallace*, 9 N. Hamp. 111.—8 Cow.
25.—11 Wend. 417.  As in this case then, the members of
the Court below, by the consent and request of the parties,
performed the functions of a jury as well as those of the
Court, this question must be considered as having been deci-
ded adversely to the plaintiff in error by the jury to which it

Nov. Term,
1847.

Humphreys
v.
Comline.

was submitted; and there will be the same objection to a reversal of such decision upon a matter of fact, unless there clearly appears to have been a misapprehension of the effect of the evidence, as exists in cases where there has been an ordinary jury trial. We are necessarily less able to decide upon such fact from the evidence as condensed in a bill of exceptions, than the Court or jury before whom the witnesses were personally examined; and as it is by no means clear that the decision of the Circuit Court, so far as it regards this branch of the case, is erroneous, we should not be warranted in disturbing it.

The counsel for the plaintiff in error base their argument that there was an implied warranty in this case, as we understand it, upon two grounds: 1st, that fraudulent representations, as to the quality of the molasses, were made by *Comline* at the time of the sale; 2dly, that independently of such representations, an implied warranty accompanies the sale of an article for a specific purpose that it is reasonably fit for that purpose.

A fraudulent representation or any fraudulent concealment by the seller, as to the quality of the goods sold, amounts to a warranty in law. 2 Kent's Comm. 478. One party must not practise any artifice to conceal defects, or make any representations for the purpose of throwing the buyer off his guard. *Ibid.* 482. But whether there was any such fraudulent representation or concealment in this case, was also a jury question; and there is the same reason for not disturbing the decision of the Circuit Court upon this point, as upon that relating to an express warranty. Though there is some evidence proper for consideration in a question of this kind, there is not enough clearly to establish the fact that the representations made by *Comline* at the time of the sale were fraudulent. It should have been shown that they were not only false, but known to have been so by him at the time they were made. 10 M. & W. 147. Considerable stress is laid upon the circumstance that he proposed to take off two gallons from the marked quantity, in order that the gauging might be waived. It is argued that therefrom the conclusion should be drawn that he knew the molasses to be bad, and that this was an artifice to prevent the barrels from being opened and the quality of

the contents discovered. This was, to be sure, a circumstance proper to go to the jury for what it was worth in connexion with other circumstances, but of itself it is certainly insufficient to warrant such a conclusion; and there is little else' in the testimony before us tending to show that *Comline* had any knowledge, at the time of the sale, that the molasses was not of good quality.

The case must rest then, in its present aspect, entirely on the last position assumed by the plaintiff in error, namely, that the law imports into a contract for the sale of molasses in barrels to a grocer for retail purposes, where there was no inspection of the quality though the barrels were present, an implied warranty that the molasses was fit for such purposes.

The civil law held the vendor of chattels responsible for all latent defects which rendered them unfit for the use for which they were purchased. A sound price was understood to warrant a sound article. Co. Litt. 102.—2 Blacks. Comm. 451. But the rule of the common law is different. The latter, says Chancellor *Kent*, "very reasonably requires the purchaser to attend, when he makes his contract, to those qualities of the article he buys, which are supposed to be within the reach of his observation and judgment." If he does not, the maxim *caveat emptor* applies, and he buys at his peril. 2 Kent's Comm. 478. Several qualifications have been made, however, to the original rule of the common law, which was, that the only implied warranty, attending a sale of personal property for a fair price, was a warranty of the title of the vendor. Some of the cases both in *England* and in this country, it must be conceded, approach so nearly to the rule of the civil law, that it is very difficult to reconcile them with that of the common law as it had been previously understood. In none of them, however, is there any professed intention to adopt the former rule in preference to the latter. They are all based upon some real or supposed necessity for the modification of the rule of the common law, to meet certain classes of cases having in them additional ingredients to those constituting a simple contract of sale. Thus it appears to be pretty well established, that a warranty that goods are of a merchantable quality will be implied,—1st, when an examination of the goods is, from

Nov. Term, 1847.

HUMPHREYS
v.
COMLINE.

their nature or situation at the time of the sale, impracticable; 2dly, upon an executory contract to manufacture an article or to furnish it for a particular use or purpose; 3dly, in sales by sample that the bulk should correspond with the specimen exhibited. See Story on Sales, 314 *et seq.*

Under the first head are instanced sales of goods at sea, or stored in the hold of a ship, or in a storehouse, so that only the surface can be seen; or in bales, so that an examination of the centre cannot be made without tearing the bales to pieces. *Gardiner* v. *Gray*, 4 Camp. 144. This rule is indefinite in its nature. One great difficulty in applying it to particular cases is, the ascertainment of what amounts to an impracticability of examination. In *Gardiner* v. *Gray*, Lord *Ellenborough* said a warranty would be implied when "there was no *opportunity* to examine;" and this qualification has been approved and adopted in most of the later cases. *Jones* v. *Bright*, 5 Bing. 533.—*Brown* v. *Edgington*, 2 Man. & Grang. 279.—*Chanter* v. *Hopkins*, 4 M. & W. 399.

In the class of cases included under the second head, the "purpose" which is supposed to raise the warranty has been the subject of much discussion. In *Smith* v. *Marrable*, 11 M. & W. 5, where the contract was for the letting of a furnished house, it was held there was an implied warranty that the house was reasonably fit for habitation. But in *Sutton* v. *Temple*, 12 M. & W. 52, where the defendant had contracted for the eatage or pasturage of a piece of land for seven months, and it was found that the pasture was unfit for cattle, owing to the effect of a poisonous substance which had been spread over the field, it was held there was no implied obligation on the part of the lessor, that the pasture was fit for the purpose for which it was taken. The learned judges' endeavored to distinguish this case from that of *Smith* v. *Marrable*, by characterizing the latter as the case of a contract of a mixed nature for the letting of a house *and furniture*. It is by no means established by the cases in *England* or this country, that the sale of an article for a particular purpose, where the delivery accompanies the sale, always amounts to a warranty that it is fit for such purpose. Those in which it has been so held must rather be regarded as exceptions to a contrary rule. Lord *Abinger*, in giving his opinion in *Sutton*

v. *Temple*, observes that the doctrine maintained in *Smith* v. *Marrable*, would not be applicable where the party has had an opportunity of personally inspecting a ready furnished house, by himself or his agent, before entering on the occupation of it.

It is said that in the sale of provisions for domestic use a warranty is implied that they are sound and wholesome, on the ground that such a warranty is necessary for the preservation of health and life. But it has been denied that any thing can be inferred from the sale of provisions, which may not be inferred to a like purpose in other cases. *Wright* v. *Hart*, 18 Wend. 464, Senator *Tracy's* opinion. — *Emerson* v. *Brigham*, 10 Mass. 197. — *Winsor* v. *Lombard*, 18 Pick. 57. In the two last cases the warranty is put upon the ground of the deceit; and it is said the only difference is, that in the case of provisions the fraud is more obvious, as when a butcher sells stale and unwholesome meat to his customers as fresh and sound, the artifice is proved by the fact itself, as his knowledge of the falsehood is to be presumed from the nature and duties of his trade or calling. Without deciding that point, however, or whether molasses and such like articles should be included under the term "provisions," if the rule, that by the sale of provisions without any fraud on the part of the vendor a warranty is implied, be well founded, we think this case does not come within such rule, inasmuch as the molasses in question was not sold for immediate domestic consumption, but *as merchandize* to a dealer to be sold again at retail. To say that, in such cases, all articles which may be used in the diet of the human family are subject to a rule of law, as regards their sale, different from that which prevails in relation to other merchandize, would be to establish a distinction which might prove extremely inconvenient and troublesome in commercial transactions, and one not warranted by any analogous decisions.

If, then, the present case is to be excepted from the operation of the rule *caveat emptor*, it must be for the reason that it should be classed among the cases included under the first head of exceptions above mentioned, in which a warranty is implied from the impracticability or difficulty of making an examination. Supposing we give this rule the most liberal

Nov. Term, 1847.

HUMPHREYS
v.
COMLINE.

construction of which it is susceptible, what degree of difficulty in such examination shall be deemed sufficient to bring a sale within it? In *Holden* v. *Dakin*, 4 Johns. 421, there was a sale of paint in unopened kegs; in *Thompson* v. *Ashton*, 14 *id*. 316, a sale of crockery in crates; in *Hart* v. *Wright*, 17 Wend. 267, a sale of flour in barrels; in *Salisbury* v. *Stainer*, 19 *id*. 159, a sale of hemp in bales; and in *Hyatt* v. *Boyle*, 5 Gill & Johns. 110, a sale of tobacco in kegs. In all of these cases, the fact of the articles being enclosed in vessels or packages was held to be no excuse for the want of an examination by the purchaser. It would seem to us that the difficulty should at least be so great that it could not be overcome by ordinary care and diligence on the part of the vendee. Here the molasses was in barrels unopened at the time of the sale, but there was certainly no difficulty in opening them sufficiently to ascertain the quality of their contents. A very little precaution on the part of *Humphreys* would have prevented his being imposed upon, by the sale to him of an article which was unfit for the purpose he designed it for; and it is better that he should suffer for the want of such precaution, than that a door should be opened to an interminable field of litigation for sellers and buyers. If it should be held a sufficient excuse for the neglect to make an examination, that the molasses was in barrels, such an excuse would be equally available in all cases where the article sold is in any kind of enclosure, however readily the vessels or envelopes might be opened. In fact, it would be available in almost every case, where the purchaser should not choose to examine the goods he is contracting for. Persons engaged in trade, such as retail grocers, are to be presumed to be capable judges of the quality of the articles in which they deal; and to say that in case they should not choose to exercise their judgment, or to remove any trifling impediment in the way of their doing so, the vendor shall be responsible for all defects, would be an almost entire subversion of the rule of the common law, which requires the purchaser when he makes his contract, in the absence of an express warranty and of fraud or deceit, to attend to the qualities of the articles he buys.

*Per Curiam.*—The judgment is affirmed with 1 per cent. damages and costs.

*J. G. Marshall* and *J. D. Glass*, for the plaintiff.