Nov. Term,
1857.

GATLING
v.
NEWELL.

*Thursday,
December* 10.

*T. H. Nelson*, for the state.

GATLING *v.* NEWELL and Another.

Suit for rescission of a contract. The writings were all between the parties to the suit; but the evidence disclosed that another person was interested. No objection as to the parties was taken in the pleadings. *Held,* 1. That the objection could not be raised on appeal. 2. That sufficient parties were before the Court.

All trials under the code take the features of a trial at law, rather than those of a chancery trial; hence this Court accepts the verdict of a jury as generally conclusive upon the facts.

If accompanying a contract, there be an express warranty, a party may have remedy for a breach, by suit upon the warranty.

So, for false representations in a contract, or as to character for pecuniary responsibility, there may be an action of deceit; but in this action, a *scienter* must be alleged and proved.

In a sale by sample, the articles sold must, on delivery, correspond to the sample, or they may be rejected. Where the question in a suit is as to what the terms of a written contract really are, parol evidence of prior and contemporaneous statements is inadmissible.

A contract may be rescinded for some false and fraudulent representations constituting an inducement to it, whether the party making the representations knew them to be false or not; and in a suit to procure such rescission, parol evidence of such prior and contemporaneous representations, is admissible.

NOTE.—The abstract of this valuable case has been purposely made very full. The exact language of the learned Judge who delivered the opinion of the Court, has been adopted in the statement of most of the points, with some slight changes for the sake of brevity.

But the representation must be as to fact, and go to a material matter; it must be one upon which the party to whom it was made has a right to, and does rely: mere matter of opinion, exagerated or general representation of quality, matter equally open to the knowledge of both parties, or matter not relied on, will not vitiate the contract, especially where the parties stand mentally upon an equal footing, and in no fiduciary relation.

Nov. Term,<br>1857.<br><br>GATLING<br>v.<br>NEWELL.

A party who would rescind a contract on the ground of fraud, must offer to do so within a reasonable time after the fraud is discovered.

Where no facts are involved but the simple one of the length of time elapsed, the question as to reasonable time is one of law; but where disputed facts, involving questions of excuse, of time of discovery of the fraud, &c., are to be passed upon, the question is a mixed one of law and fact, and is for the jury.

On rescission, the general rule is, that the parties must be placed in the identical situation in which they were on entering into the contract.

A contract, if rescinded at all, must be rescinded *in toto*; and though the rescission cannot leave the parties, in every respect, as they were at the time they contracted, yet as to the contract itself, they may be so, as being no longer contracting parties, or liable on account of having been such.

The fact that parties cannot be put precisely *in statu quo* as to the subject-matter of the contract, will not preclude a decree for rescission; otherwise, an executed contract could never be rescinded.

For the party who has been defrauded by false representations, is not bound to offer to rescind till a reasonable time after he discovers the fraud: hence, the parties could not be placed *in statu quo* as to time.

So, a party must be allowed to use the article before he can discover the fraud: hence, there could be no *statu quo* as to the use of the article; but if the party has derived any benefit from such use, he must, on tendering it back, offer to account for the benefit.

So, as to the condition of the party practicing the fraud, it is not necessary that the other party should be able to place him *in statu quo*: if he can return to him in substance what he received, affected only by time and legitimate experimental use, and is willing to take the value of what he conveyed to the defrauding party, he can do so.

But non-executed contracts may, on rescission, generally be brought within the rule, as to *statu quo*.

If a party use or deal with property purchased, after he has fully discovered the fraud, he waives his right to a rescission.

An application for the rescission of a contract, is addressed to the sound discretion of the Court, at the time it is to be exercised; and to enable the Court rightly to exercise that discretion, it should be possessed of all the relevant facts in the case.

It does not necessarily follow, that a contract will be rescinded because it was fraudulent at its execution.

If the defrauded party has been grossly negligent in complaining, has used the property, or otherwise surrounded the case with facts rendering it doubtful whether, under any circumstances, a rescission could be rightly had; and it should be shown that the value of the article is almost as great as it was represented to be, that fact will have weight in removing the doubt.

In such a case, all the evidence as to value should be heard before deciding the point.

Nov. Term,
1857.

GATLING
v.
NEWELL.

A patent from the *British* government, authenticated by the great seal, proves itself; but it only shows, *prima facie*, that the article patented is a new and useful invention, of some probable value, which is fully proved by a patent from our own government. And so of medals of scientific institutions.

The report of a committee of a state board of agriculture, touching the utility of a patented machine, being *ex parte*, not under oath, and by men whose testimony might be taken in a case involving that question, is hearsay, and inadmissible in evidence upon that point; though for some purposes, public documents are admissible.

But the fact that sales of rights have been made in *Illinois*, is legitimate evidence to prove the value of the right to use such machine in other states.

Where a witness had testified that the right to use a patented machine in certain ·territory was worth a certain sum, the Court would not permit him to testify that an unknown person had offered him that sum for the territory, but that he, witness, had no authority to sell it. *Held*, that the proposed evidence was immaterial.

Monday,
December 14.

APPEAL from the *Montgomery* Circuit Court.

PERKINS J.— This was a suit under the new code of practice, by *Newell* and *Beach* against *Gatling*, to obtain the rescission of an executed written contract. An answer was filed, to which there was a reply. Evidence was heard, and judgment of rescission rendered. The evidence was all properly placed upon the record, and an appeal taken to this Court.

The case has been most elaborately argued, and a great many questions presented.

The first is one of parties. The written articles were all between *Newell* and *Beach*, and *Gatling*. The evidence, however, clearly discloses that another person, to-wit, *William J. Peaslee*, Esq., was interested with *Newell* and *Beach*, in the contract. This fact is insisted upon here, as ·a ground of reversing the judgment below. We do not see how it can be made available for that purpose. The statute is explicit on the subject. Sections 50, 54 and 63, of the practice act, provide for the addition of new parties, and the mode of making it. And they provide that, if the objection as to parties is not taken by pleading, it shall be deemed to be waived. 2 R. S. pp. 38, 39, 41. Sufficient of parties are before the Court to enable it to render a proper judgment.

Another question relates to the practice to be pursued

by this Court in adjudicating the cause. Under the old

system, the suit would have been upon the chancery side of the Court, and in reviewing it here, the Court would have weighed the evidence, and determined it upon its merits. But the statutory provisions regulating the new, consolidated system of practice, have erased almost all the features of a chancery trial, and substituted those of a legal one, in which this Court accepts the verdict of the jury as generally conclusive upon the facts. The evidence upon the trial is now oral, does not necessarily go upon the record, and the trial is by jury. It would seem to have been the intention that all trials should be as at law. This Court has uniformly acted upon this construction of the statute, since the new code came into force. *Mc Vicker et al.* v. *Pratt*, 5 Ind. R. 450.—*Linn* v. *Barkey*, 7 *id.* 69.— *Wright* v. *Field, id.* 376, and numerous other unreported cases (1). We regard the question of practice as thus settled, and no longer open for discussion. It will, therefore, at once occur to counsel, that their very able argument here cannot have that influence in the decision touching the merits of the cause, that it might have had, had it been addressed to the jury below. It was here addressed to the facts.

Having disposed of these preliminary points, we are prepared to advance to those upon which the determination of the case must depend. The suit, as has been said, was to procure the rescission of an executed, written contract— a contract for the purchase and sale of the right to use and vend *Gatling's Wheat Drill* in certain territories. The ground of the suit, was alleged fraudulent representations, by which the contract was induced.

A contract may be rescinded for such cause. If, accompanying a contract, there be an express warranty, a party may have remedy for a breach thereof by suit upon the warranty. *Cutler* v. *Cox*, 2 Blackf. 178.— *Wynn* v. *Hiday, id.* 123.—*House* v. *Fort*, 4 *id.* 293,

So, for false representations in a contract, or as to character for pecuniary responsibility, there may be an action of deceit; but in this action, a *scienter* must be averred

Nov. Term,
1857.

Gatling
v.
Newell.

and proved. The party must have known, or had good reason to know, that the representations were false. *Hopper* v. *Sisk*, 1 Ind. R. 176.—*The State Bank* v. *Hamilton et al.*, 2 *id.* 457.—*Stanley* v. *Norris*, 4 Blackf. 353.—*Humphreys* v. *Comline*, 8 *id.* 516.

In a sale by sample, the articles sold must, on delivery, correspond with the sample, or they may be rejected. Chit. on Cont. 463.

And where the question in a suit is as to the terms of a contract, as to what the contract really is, which purports to be in writing, parol evidence of prior and contemporaneous statements is inadmissible.

But a contract may be rescinded for some false and fraudulent representations constituting the inducement to it, and this equally, whether the party making the representations knew them to be false or not. *Smith* v. *Richards*, 13 Pet. 26.—*Shaeffer* v. *Sleade et al.*, 7 Blackf. 178. And in a suit to procure such rescission, parol evidence of such prior and contemporaneous representations is admissible.

It is not, however, every erroneous representation that will entitle a party to such rescission. The representation must be as to a fact, or facts, and go to a material matter. It must be one on which the party to whom it is made has a right to, and does rely. If it be mere matter of opinion, or exagerated, general representation of quality, capacity, or usefulness, or be as to a matter equally open to the knowledge of both parties, or be one not relied on, the representation, though untrue, will not vitiate the contract. Especially will such be the case, where the parties stand mentally upon equal footing, and in no fiduciary relation. The law will not relieve a man, thus circumstanced, for voluntarily neglecting to exercise common sense and judgment, if he has them. *Foley* v. *Cowgill*, 5 Blackf. 18.— *The President, &c., of Connersville*, v. *Wadleigh*, 7 *id.* 102.— *Port* v. *Williams*, 6 Ind. R. 219.—*Humphreys* v. *Comline*, 8 Blackf. 516.—*Morgan* v. *Snapp*, 7 Ind. R. 537.—*May* v. *Johnson*, 3 Ind. R. 449.—6 Blackf. 380.

Examples of the character of the representations which will entitle, they being false, to a rescission of a contract,

are given in *Smith* v. *Richards*, and *Shaeffer* v. *Sleade*, *supra*. And see *Newell et al.* v. *Gatling*, 7 Ind. R. 147; *M' Cormick* v. *Malin*, 5 Blackf. 509; *Marshall* v. *Billingsly*, 7 Ind. R. 250; *Peter* v. *Wright et al.*, 6 *id.* 183.

The next question presenting itself is, were such representations made in this case?

That they were alleged in the complaint, has already been decided by this Court. *Newell et al.* v. *Gatling*, *supra*. And that they were proved, relied upon, and not waived, the jury, or Court acting as such, that tried the case below, has determined. Whether that determination was such an one as this Court would come to on the evidence, it is not necessary that we should say. It is enough that there is some evidence tending to its justification. *Cahill* v. *Vanlaningham*, 7 Ind. R. 540.—*Mc Vicker et al.* v. *Pratt*, *supra*.— *Nagle* v. *Hornberger*, 6 Ind. R. 69.—*Rapp* v. *Grayson*, 2 Blackf. 130 (2).

But we are here met with the objection that the contract could not be rescinded on account of lapse of time, and because the parties could not be placed *in statu quo*.

It is well settled, that a party who would rescind a contract on the ground of fraud, must offer to do so in a reasonable time after the fraud is discovered. *Cain* v. *Guthrie*, 8 Blackf. 409, and cases cited. See 6 Ind. R. 391. But who is to determine the question of reasonable time? Is it one of law, or fact? Where there are no facts involved but the simple one of the length of time elapsed, it is a question of law. But where disputed facts, involving questions of excuse, of time of discovery of the fraud, &c., as in this case, are to be passed upon, the question, like that of due diligence in the prosecution upon an assigned promissory note, is a mixed one of law and fact, and is for the jury. *Holbrook et al.* v. *Burt et al.* 22 Pick. 546.—*Kingsley* v. *Wallis*, 14 Maine R. 57.—*Kelsey* v. *Ross*, 6 Blackf. 536. It has here been passed upon by them, and we cannot disturb the finding.

But on a rescission, it is the general rule that the parties must be placed *in statu quo*, which is translated to mean, in the identical situation in which they were on entering

into the contract. *Peters* v. *Gooch*, 4 Blackf. 515. To the same effect, see 5 *id.* 185, 441, 533; 8 *id.* 215, 467; 6 *id.* 33; 7 *id.* 55, 178, 227; 2 Ind. R. 532; 4 *id.* 45, 454; 5 *id.* 409, 319; 6 *id.* 300. In other words, the contract must be rescinded *in toto*, if at all. It cannot be rescinded in part, and continued in existence in part. It cannot be rescinded for the purpose of reclaiming what was given upon it, and treated as in force to recover damages for its breach. If it is rescinded, it is as if it had never existed. And though its rescission cannot leave the parties, in every respect, as they were at the making of the contract, yet as to it, they may be so—that is, as not being contracting parties, nor under any liabilities on account of having been such. See *Withers* v. *Greene*, 9 How. (U. S.) 213, opinion of Mr. Justice NELSON, in app. p. 661; *Junkins* v. *Simpson*, 14 Maine R. 364; *Rinker* v *Sharp*, 5 Blackf. 185.

But the fact that the parties cannot be put precisely *in statu quo* as to the subject-matter of the contract, will not preclude a decree for the rescission of a contract. If it would, an executed contract never could be rescinded by the decree of a Court; for the parties never could be thus placed—

1. As to time.

The party who has been defrauded by false representations, is not bound to offer to rescind till a reasonable time after he discovers the fraud. All the authorities hold that he may do so then. But, meanwhile, time has not stood still—has not waited—and on the rescission of a contract, what has fled cannot be returned.

2. As to the use of the article, necessary to the discovery of the fraud.

A party must be allowed to make such use, or how shall he ascertain the fact of the fraud, or have the benefit of his bargain if there be none? If a man purchase a horse for family use as a carriage horse, the animal being represented as gentle, may he not use the horse a day or two, or long enough to ascertain the fact? And, it turning out not to be so, can he not return the horse because of such use? And suppose, on such trial, the horse, from viciousness, ran

away and injured himself, as well as his purchaser, could the seller say he was not placed *in statu quo?* But the party, if he has realized any benefit in such use, must, on tendering back the article, offer to account for the benefit. This is laid down in *Shaeffer* v. *Sleade, supra,* and is equity. See *Wallace* v. *McVey,* 6 Ind. R. 300.

3. As to the condition of the party practicing the fraud.

It is not necessary that he should be able to place the opposite party in *statu quo.* He could always put it out of his power to do that, and thus prevent a rescission. If the other party can return to him, in substance, what he received, affected only by time, and legitimate experimental use, and is willing to take the value of what he conveyed to the defrauding party, he can do so. See *Coe* v. *Smith,* 4 Ind. R. 79, on p. 81. We speak now of executed contracts. Such as are not executed may, of course, on rescission, generally be brought within the strict rule as to *statu quo.* The proposition we are asserting, is judicially sanctioned in *Masson* v. *Bovet,* 1 Denio, 69, and approved in *Colson* v. *Smith,* 9 Ind. R. 9, and case cited. But a party must not use or deal with the property purchased, after he has fully discovered the fraud practiced upon him in its purchase. If he does, he waives his right to a rescission. *Comparet* v. *Hedges,* 6 Blackf. 416.—*Shaeffer* v. *Sleade, supra.*

Now, these questions were, in this case, mixed ones of law and numerous complicated facts, were for the jury, under our present system, and have been by them determined. That nothing has been made by using or dealing with the things purchased in this case, seems clear, beyond doubt, from the evidence.

But it is claimed that the deed of reconveyance of the patent right was insufficient to vest in *Gatling* the entire interest therein, and, hence, did not place the makers of it, *Newell* and *Beach,* in a position to claim a rescission of the purchase. The legal effect of that deed of conveyance was a question of law. It may have been, though we do not so decide, defective. But it is clear that it was tendered in good faith, for the purpose of effecting a res-

Nov. Term,
1857.

GATLING
v.
NEWELL.

cission of the contract; that it was not objected to by Gatling, on the ground that it was defective (and had it been, it would have, at once, been perfected); and that a subsequent deed and decree have cured its defects, if any existed. Under these circumstances, we think the objection now urged cannot avail to reverse the decree. If there were any trivial incumbrances upon the right to use the patent, they were placed there by Newell and Beach in legitimately testing the correctness of the representation as to the demand for the purchase of the drill. However doubtful we might be, therefore, as to the correctness of the finding upon the facts of this case, we could not bring it within any principle of law that would justify a reversal of the judgment below, by a Court of error, unless it should appear that that Court erred in ruling upon some question of law in the proceedings resulting in that judgment.

The Court rejected much evidence that was offered by the defendant, Gatling. That evidence, if admitted, would, it is claimed, have tended to show the intrinsic value of the wheat drill, and also a demand for it, subsequent to the contract with Newell and Beach; but the ruling of the Court in rejecting it, is defended upon the ground that such evidence would not have met the material allegations in the case, viz., the correctness of the representations as to the Ohio and Chicago contracts, and the demand for the drill at the time the representations were made. See Yost v. Shaffer, 3 Ind. R. 331; Alexander v. Dunn, 5 id. 122; M'Connell v. Baker, 4 Blackf. 325.

To decide upon these points correctly, we must ascertain whether a contract that is fraudulent will, in all cases, be rescinded for that reason, and also what issues were being tried in this case.

The complaint alleged that Gatling's representations, as to the value of the drill, &c., "were false, fraudulent and deceitful; and that the interest so purchased by them, of said defendant, is, and was, entirely worthless, and of no value whatever." See, as to this allegation, Howard et al. v. Cadwalader, 5 Blackf. 225.

Now, the question of the then value of the drill and patent was clearly involvent in the case, in whatever aspect viewed.

1. It was one of the issues in the cause.

2. If, instead of a rescission, the Court should give damages for the fraud, then it would be necessary to know the value of the drill, &c., in order to determine the amount of damages. And,

3. It was necessary to know the value of the drill, &c., in order to rightly determine whether there should or should not be a rescission of the contract.

An application for the rescission of a contract is addressed to the sound discretion of the Court, at the time it is to be exercised. See *The Trustees, &c.* v. *The State*, 7 Ind. R. 180; *Brackenridge* v. *Dawson, id.* 383; *Ash* v. *Daggy*, 6 *id.* 259. And to enable it, rightly, to exercise that discretion, it should be possessed of all the relevant facts in the case.

It does not necessarily follow, because a contract was fraudulent at its execution, that it will be rescinded. Even if, in a given instance, there had been fraudulent representations, still if the defrauded party had been grossly negligent in complaining of them, had used the property, &c., had, in short, so surrounded the case with facts as to render it doubtful whether, under any circumstances, a rescission could be rightly had, then, surely, if it could be shown that the value of the article was nearly as great as it was represented to be, the fact might have weight in removing the doubt. In such a case, all the evidence as to value should be heard before deciding the point. If there was not much fraud, it might not justify the rescission under existing circumstances. The evidence in question, if of the character claimed for it, would be alike admissible, whether the question of giving rescission or damages should be regarded as one for the jury under instructions from the Court, or one for the Court upon the facts specially found by the jury—a point of practice we need not here settle.

It by no means follows, that because the complaint, upon its face, made a case for rescission, the evidence upon the trial also made one.

It remains but to ascertain whether the items of evidence in question were material, relevant and admissible. They were—

1. A patent from the *British* government, and a medal awarded by the *American Institute* of *New York*.

2. A notice of the drill, in the report of a committee, published in the proceedings of the state board of agriculture of *Indiana*.

3. The fact that numerous sales of rights to use the drill had been made in *Illinois*. This item was offered expressly upon the question of value in the right of the drill.

4. An offer for the purchase of a county in *Ohio*.

As to the *British* patent, being authenticated by the great seal of that government, which proved itself, it required no further evidence of genuineness. 5 Am. L. Reg. p. 590. But even if admissible in evidence, it would only show, in the absence of any *British* statute giving it greater weight, *prima facie*, that the drill was a new and useful invention of some probable value; and that was as fully established as it could be by the patent from our own government. The *New York* medal would be of no higher character as evidence. Hence, the admission, or rejection of these items could not have affected the case.

The report of the state fair committee was *ex parte*, not upon oath, and by men whose evidence in the cause could have been taken. We think the report, in the absence of any authority deciding to the contrary, was hearsay, and not admissible in evidence upon the question here in controversy; though, for some purposes, public documents are admissible. See *Allen* v. *Hunter*, 6 McLean, 303.

The fact that sales of rights had been made in *Illinois*, we think, was legitimate evidence in this case. Indeed, the Court below offered to admit evidence of such sales, if made the season after the sale in question to *Newell* and *Beach*. But why should the offer have been so limited, touching the question of value?

The patent was issued in 1848, run for fourteen years, and hence, does not expire till 1862. It might have a value during all the time to that date. The sale to *Newell* and *Beach* embraced the territory of *Minnesota*, most of the state of *Michigan*, and a part of *Ohio*. Now, though no evidence was given to the point, we know, as matter of general knowledge, that parts of *Ohio, Minnesota* and *Michigan* are wheat-growing regions, and as well adapted to the use of the drill, as is *Illinois;* and if it had a value in *Illinois*, it must be of some, perhaps of great value in these other states. Such evidence would, therefore, be legitimate, as tending to show that fact. Indeed, it must have been much upon the credit of the success, or supposed success of the drill in territory other than that purchased by *Newell* and *Beach*, that they made their purchase; because that territory had not before been purchased for use. *Gatling* must have sold, and they purchased, upon the inference that, if the drill had succeeded in one or more wheat-growing states, it would succeed in others of similar character, and hence, be as valuable in them.

As to the offer to purchase a county in *Ohio*, that related to territory owned by the plaintiffs below, and such offers might, of course, constitute legitimate evidence. See Curtis on Patents, pp. 469, 392, 83, and 2 Greenl. Ev. p. 408. Was the rejection of the proposed proof of that made in this case erroneous? We must examine the facts touching it. *James B. Hart*, a witness, was permitted to testify that from his knowledge of *Miami* county, *Ohio*, it could be sold for 300 dollars. That was his opinion as to the value of the right to use the drill in that county. He was a resident of *Decatur, Illinois*, and while there, defendant below proposed to prove, a person, to him a stranger, but who said he was from *Miami* county, *Ohio*, offered to purchase, from him, said county, at 300 dollars, but witness had no authority to act in the matter, and nothing further was done. This offer the Court refused to hear proof of. It would not have been error to hear the proof; but we do not see how the refusal could have in-

fluenced the decision of the cause. The witness had already testified to the value of the county—300 dollars—the proposed offer was for no more, was by an unknown person to one having no power to sell, and we cannot perceive that it would have added any weight to the statement of the value of the county, that he had been permitted to make.

The question remains, is the error in rejecting the item of evidence touching the *Illinois* sales, such an one as should reverse the case? It is, unless we can say that that evidence, if admitted, would not have changed the result. On this point the Court has deliberated much, and we are unanimous in the opinion that we cannot venture that assertion. The evidence went to a material point in the case, and we cannot say what influence it might have had with the Court and jury, nor how far it might have controlled the decision. We think there should be another trial of the cause.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*O. H. Smith* and *J. A. Liston*, for the appellant (3).

*J. E. McDonald* and *H. O'Neal*, for the appellees (4).

(1) See *Littler* v. *Smiley*, ante, 116; *Kile* v. *Chapin*, ante, 150; *Harvey* v. *Quick*, ante, 258; *Vasbinder* v. *Pugh*, ante, 355; *The State* v. *O'Haver*, 8 Ind. R. 282; *Logansport* v. *Dunn*, id. 378; *Gibson* v. *The State*, ante, 264.

(2) See note (1), especially *Vasbinder* v. *Pugh*.

(3) Counsel for the appellant cited authorities as follows:

1. The contracts, in this case, must be proved as charged, or the appellees cannot recover. 2 Stark. Ev. pt. 4, pp. 83, 86.—1 Greenl. Ev. 58, 63.—*Weall* v. *King*, 12 East, 452.—3 Stark. Ev. pp. 1545, 1547, 1548.—*Gilbert* v. *Stanislaus*, 3 Price, 54.—*Snell* v. *Moses*, 1 Johns. 96.—*Perry* v. *Aaron*, id. 129.—*Crawford* v. *Morrell*, 8 id. 253. Substance of issue must be proved. See the same authorities, and *Swallow* v. *Beaumont*, 2 B. & Ald. 765; *Robertson* v. *Smith*, 18 Johns. 459.

2. An entire contract of sale cannot be apportioned by the vendee, even when the defect extends only to some of the goods; and if affirmed as to part, it will, notwithstanding an offer to return the rest, be binding as to the whole. *Chandler* v. *Lopus*, 1 Smith's Lead. Cas. 204.—*Voorhees* v. *Earl*, 2 Hill, 288.—*Kimball* v. *Cunningham*, 4 Mass. R. 504. A party cannot accept a performance in part, and reject the remainder. See the same authorities. By the plaintiffs exercising their election, they have forever affirmed the contract. *Hazard* v. *Irwin*, 18 Pick. 102.—*Beecker* v. *Vrooman*, 13 Johns. 302.—*Burton*

v. *Stuart*, 3 Wend. 238.—*Com.* v. *Henderson*, 5 Mass. R. 322.—*Borrekins* v. *Bevan*, 3 Rawle, 23.—*Harrington* v. *Stratton*, 22 Pick. 510.

3. Where the plaintiff has not sufficient matter to sustain an action on the contract, he cannot recover by turning it into a proceeding for a tort, unless he can show that he was misled by statements not only false in point of fact, but false within the knowledge of the party making them, and made with an intent to deceive. *Rawlings* v. *Bell*, 1 C. B. 951.—*Chandler* v. *Lopus*, 1 Smith's Lead. Cas., 3d ed. 202.

4. When a party has discovered what he deems a fraud, before he has entered on the performance of services which he has agreed to render, he must then decide whether he will stop short, or go on with the contract. If he continue to act under the contract, that must govern throughout. *Sar. and Sch. Railroad Co.* v. *Row*, 24 Wend. 74.

5. A person who is induced to part with his property on a fraudulent contract, may, on discovering the fraud, avoid the contract, and claim a return of what has been advanced upon it. The contract is void *ab initio*, and the fraudulent purchaser takes no title; but action must be taken so soon as the fraud is discovered; the election is then with him, to affirm or disaffirm the contract, and it must be rescinded *in toto*, if at all, the party disaffirming returning what he may have received. *Masson* v. *Bovet*, 1 Denio, 69. See Chit. on Cont. 409, 681, 742.

6. Where a party sold a patent right, and the vendee paid the money, and used the patent right, and enjoyed some benefit therefrom, but it afterwards appeared that the patent was invalid,—it was held that money had and received could not be sustained, a partial benefit having been received. 1 Chit. Pl. 389. See, also, Chit. on Cont. 623, and authorities there cited.

7. A contract will not, in general, be rescinded unless the contracting parties can be restored to the same situation occupied by them respectively when the contract was entered into, nor unless the application for a rescission be made within a reasonable time. * * * If a party desires to rescind a contract, on the ground of mistake or misrepresentation, he is bound to be prompt in communicating the facts upon which he relies to the opposite party, and also his intention to rescind. *Cain* v. *Guthrie*, 8 Blackf. 409. See, also, the cases cited on p. 410; and see *Peters* v. *Gooch*, 4 *id.* 515; *Chance* v. *The Board, &c.*, 5 *id.* 441; 7 *id.* 55, 179; 8 *id.* 467; 1 Chit. Pl. 388; Chit. on Cont. 276; *Hunt* v. *Silk*, 5 East, 449. These being executed contracts, both parties must be placed *in statu quo*. See the same authorities, and Adams's Eq. p. 191.

8. This is purely an action of tort, and is not founded on contract. The suit is brought for rescission; but the appellees cannot ask to rescind the contracts, and, also, for damages founded on the same contracts which they ask to be rescinded. See cases cited to the second point, and Chit. on Cont. 741, note 1. In other words, a party having an election to rescind a contract, must rescind it wholly, or in no part; he cannot consider it void to reclaim his property, and, at the same time, in force for the purpose of recovering damages. *Junkins* v. *Simpson*, 14 Maine R. 364.

9. Touching the admissibility of the report of the agricultural committee and the *British* patent, see 1 Greenl. Ev. 91, 479 to 484; Story's Confl. of Laws, 643.

(4) Counsel for the appellees cited authority to the following points:

1. We contend that fraudulent contracts are void, not merely voidable, and that a contract void on account of fraud, is not restored and made valid by lapse of time. The language of Lord Chancellor REDESDALE, in the case of *Murray* v. *Palmer*, 2 Schoales & Lefroy, 486, on this point, is as follows: "Now, I take it that nothing will amount to a confirmation of a fraudulent transaction, but an act done by the party after he has become fully aware of the fraud that has been practiced. I do not mean to say that the party should be aware of all the circumstances of the transaction, but he must be aware that the act he is doing, is to have the effect of confirming an impeachable transaction, otherwise the act amounts to nothing, as a confirmation." Lord Chancellor ERSKINE, in the case of *Morse* v. *Royal*, 12 Ves. 373, says: "As to the effect of length of time, where there is no bar by the statute of limitation, a Court of equity will never lay down as a general proposition, that, though the fact that imposition has been practiced is established, the party is too late." Again: "The true operation of length of time is by way of evidence." But the Supreme Court of this state has recognized the principle in a very strong case. *Shaeffer* v. *Sleade*, 7 Blackf. 178. In this case an executory contract that had been made under fraudulent representations, one month afterwards was executed by the party defrauded, he having possession of the property during all that time, and ample opportunity to test the truth of the representations upon the faith of which he had made the purchase. His application for relief was not made for more than ten months afterwards, and then, not by a direct offer to the vendor to rescind, but in an application to be made defendant by answer and cross-bill in a proceeding to foreclose a mortgage, which he had assigned as part of the consideration for the purchase. The Court determined that he was entitled to relief, and gave it to him in the form of a reduction of the price, on the ground of the fraud practiced.

2. As a general rule, the right to rescind a contract may be affected by delay, but if the delay in proceeding to obtain a rescission has been caused by the party who sets it up to defeat that form of remedy, such delay cannot avail him, for that would enable him to take advantage of his own wrong. *Newell* v. *Gatling*, 7 Ind. R. 147.—*Fletcher* v. *Warren*, 18 Vt. R. 45.—7 U. S. Dig. 191.—9 *id.* 158.—*Smith* v. *Babcock*, W. & M. 246.—1 Sugd. on Vend. 324, 332.—Story on Sales, 141.

3. The party defrauded is not bound to abandon a contract on the development of the first circumstance of fraud, but has a right to ascertain the whole extent of the false representations, and no inference of confirmation of a voidable contract, or waiver of fraud can arise until all the facts are fully known to the party defrauded. *Irving* v. *Thomas*, 6 Shep. 418.—5 U. S. Dig. 36.— *Murray* v. *Palmer*, 2 Schoales & Lefroy, 486.—*Edwards* v. *Handley*, 1 Ky. Dig. 568, s. 12.

4. The appellees are not precluded from demanding relief by rescission, merely because they tried to turn to some value a worthless piece of property, that had been put upon them by fraud. *Turner* v. *Clay*, 1 Ky. Dig. 572, s. 52.

5. The rule of the *statu quo* has no reference to the property in the hands of the party who practiced the fraud. The rule in that case is, that if he who has practiced the fraud, has entangled and complicated the subject of the contract in such a manner as to render it impossible that restoration can take place, the party injured, upon restoring or offering to restore, what he had re-

ceived, and doing whatever is in his power, to undo what has been done in execution of the contract, may rescind and recover what he has advanced. *Masson* v. *Bovet*, 1 Denio, 69.—*Warner* v. *Daniels*, W. & M. 90.—7 U. S. Dig. 190.

Nov. Term, 1857.