*C. E. Walker* and *A. D. Matthews*, for appellee.

———————◆———————

## McAROY and Another *v.* WRIGHT.

CAVEAT EMPTOR—FRAUD.—Suit by the purchaser upon a contract for the sale of tobacco, a part of which, only, was manufactured at the time of sale. The complaint alleged that the tobacco already manufactured was put up in tight boxes, and that the residue was similarly packed as it was made; that it was all received and paid for without examination; that the seller fraudulently packed the tobacco in boxes made of green lumber,

McAroy and Another *v.* Wright.

and put into the boxes inferior and damaged tobacco, by means of which it became spoiled and unsaleable; that the plaintiff had no knowledge of the quality of the tobacco, and that with a view to defraud him defendant exhibited specimens which he fraudulently represented to be the quality of the tobacco he was manufacturing.

*Held,* that as to so much of the tobacco as was manufactured at the time of the contract, the complaint showed no cause of action.

*Held,* also, that as the acceptance of the tobacco manufactured after the making of the contract was procured by the fraud of the seller, the rule *caveat emptor* does not apply.

*Held,* also, that where the acceptance of goods, upon an executory contract, is procured by the fraud of the seller, an offer to return is not necessary to entitle the buyer to maintain his suit.

*Held,* also, that the plaintiff's measure of damages was the actual loss sustained, which would be ascertained by deducting the market value of the tobacco delivered, at the time of the delivery, from the market value of that which was contracted for, to which the jury were at liberty to add something by way of punishment for the deceit.

REPLY—DEPARTURE.—To a complaint charging the acceptance of goods purchased to have been procured by the fraudulent representations of the seller, without examination by the buyer, the defendant answered denying the fraud, and alleging that the buyer had examined the goods and had full knowledge of their quality. Reply, admitting an examination of the goods by the plaintiff, and a knowledge of certain facts indicating the defect complained of, but averring that he relied on defendant's representations, and that the defendant had subsequently promised to pay the damages claimed.

*Held,* that the reply was a departure.

*Held,* also, that if the reply does not support the complaint, by reason of departure, the objection may be taken by demurrer. It is too late to make the objection after verdict.

APPEAL from the *Ohio* Common Pleas.

FRAZER, C. J.—This was a suit by *Wright* against the appellants, upon a written contract made by the appellants, for the sale and delivery by them to the plaintiff, of $8000 worth of manufactured tobacco, some of which was then manufactured, and the balance was thereafter to be manufactured. For that which was manufactured (supposed to be about $1300 worth,) the price was 58 cents per pound, and for that to be manufactured 71 cents per pound for "fair bright," and 57 cents for "black" tobacco. The complaint alleges that the tobacco was delivered and paid for

within the time specified in the contract; that at the making of the contract, the tobacco which was then manufactured was put up in tight pressed boxes, and that the residue, as it was manufactured, was put up in the same way, and that it was all delivered to the plaintiff without being examined by him. That the defendants fraudulently put in the boxes inferior and damaged tobacco, to cheat the plaintiff, by reason of which it became spoiled and unsaleable; that they also fraudulently packed the tobacco in boxes made of green lumber, whereby it became further damaged, by reason of all which the plaintiff was compelled to sell it at a loss of $3500. That the plaintiff had no knowledge of the qualities of tobacco, and relied on the defendants to deliver him a good merchantable article; that they, to defraud him, brought him, while they were manufacturing for him, specimens of tobacco, which they falsely represented were the kinds they were putting up for him, by means of which he was induced to pay the contract price, and that he did not discover the fraud, nor that the tobacco was unsound, until long after he had paid therefor. That after making such discovery, he requested the defendants to take back the tobacco, and refund him the money paid, which they refused to do; that to prevent the tobacco from becoming wholly worthless he was compelled to expend $272 in overhauling and repacking it.

The first question presented is upon the action of the court below in overruling a demurrer to this complaint, alleging for cause the want of sufficient facts to constitute a cause of action.

As to so much of the tobacco as was manufactured when the contract was made, it must be apparent at a glance that the complaint shows no right of action whatever. The defendants are not alleged to have made any representations as to its quality or grade, nor is it averred that it turned out to be in any particular different from what the plaintiff expected it to be when the contract was made. There was no warranty as to its quality, and nothing appeared to have

prevented the plaintiff from examining it and knowing all about it. That it was in "tight pressed boxes" can avail nothing as to it, for it does not appear that the plaintiff was thereby hindered from inspecting it. So far the rule *caveat emptor* is applicable to the case. *Humphreys* v. *Comline*, 8 Blackf. 516.

As to that portion of the tobacco which was to be manufactured after the contract was made, there are other considerations which must receive attention. It was to be either "fair bright" or "black," or part of each grade, and the price of each was fixed by the contract. It must be understood that the tobacco was to be merchantable. How much was delivered and paid for as being of either grade is not alleged. It may all have purported to be the inferior grade, "black," and have been paid for at the price stipulated for that quality. Nor is there any complaint that it was not of the grade contracted to be delivered; but the grievance alleged is that it was "spoiled, musty, rotten and unsaleable;" that this condition of the goods was caused by two circumstances, viz: the fraudulent employment of damaged tobacco in the manufacture, and the fraudulent use of boxes made of green lumber; that while the goods were being manufactured the defendants, to cheat the plaintiff, exhibited to him from time to time specimens of tobacco, alleging that they were manufacturing such stock for him, when, in fact, they were using a different kind and quality, by which means he was put off his guard, and induced to pay for the tobacco at the contract price. That these allegations made out a strong case of fraud, deliberately planned by the defendants, and successfully executed upon the plaintiff, is quite beyond cavil, and it is averred that they thereby obtained his money. But upon the discovery of the imposition thus practiced upon him, he did not offer to rescind, by returning to the defendants the goods which had been thus fraudulently imposed upon him. But he offered to return *all* the tobacco which he had purchased, and demanded *all* the money he had paid. This would not be sufficient

for the purpose, and, in the absence of the fraud alleged, the complaint must, on that account, have been deemed bad. *Ricketts* v. *Hays*, 13 Ind. 181 ; *Groning* v. *Mendham*, 2 E. C. L., 104; *Milner* v. *Tucker*, 1 C. & P., 15 ; *Cash* v. *Giles*, 3 C. & P., 407 ; *Percival* v. *Blake*, 2 C. & P., 514; *Kellogg* v. *Denslow*, 14 Conn. 411. Indeed, in the absence of the fraud alleged, inasmuch as the tobacco was open to the inspection of the plaintiff when he received it, it was probably too late afterward to object to its quality. *Humphreys* v. *Comline*, 8 Blackf. 516.

But we think that the element of fraud in this case, as introduced by the averments of the complaint, is very important, and that other principles are applicable. To hold that accepting and paying for the tobacco, when it was open to examination on delivery, shall bar the plaintiff from a recovery, when that acceptance and payment were procured by a fraudulent artifice of the defendants, which put the purchaser off his guard, and induced him to believe that the goods were sound and saleable, would be to set at defiance every principle of reason and justice. It is true that it is not alleged in direct terms that the plaintiff was induced by the fraud to *accept* the tobacco, but only that he was thereby induced to pay the full price. But we think we ought, under the code, to regard this as equivalent to an averment that he was thus induced to receive ·the tobacco on the contract; for that consequence would legally result. A refusal to take it at the price agreed upon would be a refusal to accept it upon the contract, and the presumption must be that the delivery and the payment were simultaneous acts, no credit having been agreed upon.

That goods, the acceptance of which upon an executory contract is procured by the fraud of the vendor, need not be returned, to entitle the vendee to maintain his suit, is very clear upon principle. The obligation to return the goods, where it exists, rests upon the purchaser's duty to put the seller, who is supposed to have acted in good faith in making the delivery, in the best condition to dispose of the goods

McAroy and Another *v.* Wright.

elsewhere, and to give him an opportunity, in some cases, to furnish other goods in fulfillment of his contract. But where the seller has practiced a fraud to get the goods into the possession of his customer, the law treats him with no favor whatever—least of all, ought the purchaser to be held under obligation to take any trouble to return a possession which has been thrust upon him by fraud. In such a case the law offers to such a suitor justice only, without favor. He could recover, if payment had not been made, the value of the damaged goods, and no more. The right of the purchaser to maintain the suit is equally clear upon authority. The cases are partially collected in 2 Hilliard on Torts, 141, *et seq.* and notes. There was, therefore, no error in overruling the demurrer to the complaint.

The next question in the record relates to the sufficiency of the second paragraph of the reply, to which a demurrer was overruled.

The answer denied the fraud, and alleged a receipt of the goods by the plaintiff, with full knowledge of the character and condition of the tobacco, the manner of manufacture, and the fact that the boxes were made of green lumber.

The second paragraph of the reply to this answer is of unnecessary length, (as, indeed, is the answer,) but it admits a knowledge of mould on the tobacco, and avers that the defendant, *Pitcher*, in whom plaintiff reposed a known trust and confidence, being himself ignorant of such matters, fraudulently assured him that it was box mould, usual with all tobacco, and not injurious, and that the tobacco was sound; confiding in the truth of which he received the tobacco. That upon discovering that it was damaged, and was suffering further injury, he called on the defendants, who advised him to overhaul and sweat and dry it, and then sell it, and promised that they would pay whatever damages they might find on such sale the plaintiff had sustained by reason of the defects.

It is contended that the reply is a departure from the case made by the complaint. We regret that we are without the

aid of any argument on behalf of the appellee, and without that advantage we do not perceive how this paragraph of the reply can be sustained.

But the paragraph of the answer to which the reply was directed is merely an argumentative traverse of the essential facts of the complaint, and as the general denial was also in, it ought to have been stricken out on motion. It contains facts which are not at all in confession and avoidance of the complaint, but which, if true, make the complaint false. A reply which confesses its allegations, confesses that the complaint is not true, and necessarily abandons the cause of action made by the complaint. The paragraph of the reply under consideration does this, and in setting up other facts in avoidance makes a new and different ground of action. There is not entire uniformity in the decisions of this court as to the proper method of taking advantage of the vice of departure in a reply, which it may be remarked is the only pleading, under the code, in which it can ever exist. It is not important in this case to determine whether it must be done by demurrer or by motion, as here both methods were used in the court below. The statute (§ 67 of the code,) expressly forbids a departure, but adds, very strangely, that "the defendant may demur to a reply for any of the causes specified for demurring to a *complaint.*" This is simple nonsense, and, if construed literally, would make every reply that any sensible lawyer would be willing to prepare subject to a demurrer. It cannot be so construed, for it is beyond belief that the legislature meant to require that the reply should repeat the complaint. If it seeks by new matter to avoid the answer, and does not allege sufficient facts for that purpose, it must be held bad on demurrer assigning that cause. At common law, if the replication did not support the declaration, it was bad on general demurrer, but it was too late to make the objection after verdict, and the judgment would not be arrested if the new ground assumed by the replication was sufficient to found an action upon. We see nothing

in the code to change the previous rule. It is said in *Reilly* v. *Rucker*, 16 Ind. 303, that "a reply which may be a departure, technically, may still contain facts which, being permitted to go into the case without objection, should avoid an answer." We do not see how this can be possible, in the nature of things. As already intimated, a departure, under the code, admits the groundlessness of the complaint, abandons the case made by it, and makes a new case. This does not, in any sense, avoid the answer, but confesses it without avoiding it, otherwise it would not be a departure at all. The opinion of MARVIN, J., in *White* v. *Joy*, 3 Kernan 83, is to the same effect as *Reilly* v. *Rucker*. It in like manner loses sight of the essential definition of a departure, and proceeds to reason about a reply as being a departure which was not such, and held not to be by six of the seven judges, in that very case.

We can readily conceive how a reply which alleges new matter which supports the complaint, and avoids the answer, may, in addition thereto, contain surplus averments which do depart from the complaint. In such a case the reply is not liable to objection for departure; but the surplusage in it is, of course, subject to be stricken out on motion.

Inasmuch, then, as a departure is always a confession of the answer, without alleging sufficient facts to avoid it, and makes a new case, we think that the objection may be taken by demurrer, and that in the present case the court below erred in overruling the demurrer to the second paragraph of the reply. We have sustained the complaint on the ground that it shows that the defendants by certain fraudulent acts alleged, took advantage of the plaintiff's ignorance, and put him off his guard, and thereby imposed the tobacco upon him without examination, or a knowledge of its damaged condition. The answer denies the fraud alleged, and shows that he received it upon full examination and with a full knowledge of its condition. The reply admits that he did examine it; that he was aware of certain facts indicating that the tobacco was unsound, but avers that he

did not know that those facts were inconsistent with the soundness of the tobacco, and that the defendants, aware of his ignorance, and knowing that he reposed confidence in them, fraudulently abused that confidence by representing the tobacco to be sound, and upon those representations he was induced to act, and that they subsequently promised to pay the damages. This admits away the case made by the complaint, and makes a new case, bottomed upon a different fraud, and also a promise to pay.

Nor is this a case where a bad reply is sufficient for a bad answer. The paragraph of the answer was not bad, except in form. It was, as we have seen, an argumentative denial of the complaint.

The court instructed the jury that if the plaintiff recovered, the measure of damages would be "the difference between the price the plaintiff paid and the market value of fair bright and black tobacco, at the time the tobacco was delivered." This was wrong. The rule of damages thus given would be applicable to an action for a breach of the contract in failing to deliver any tobacco upon it, where no part of the price had been paid. But this was a suit sounding in tort, for fraud connected with a contract, full payment having been made, and the plaintiff was entitled to the actual loss sustained thereby, to which the jury would be at liberty to add something by way of punishment for the deceit. The actual loss would be ascertained by deducting the market value, at the time of delivery, of the tobacco delivered, from the market value of that which was contracted for. This rule would give both parties the benefit of the contract, and is in accordance with well established principles. *Sherwood* v. *Sutton*, 5 Mason 1; *Stiles* v. *White*, 11 Met. 356; *Reggio* v. *Braggiotti*, 7 Cush. 166; *Sharon* v. *Mosher*, 17 Barb. 518; *Seymour* v. *McCormick*, 16 How. 480; *Day* v. *Woodworth*, 13 *id.* 363; *Pasley* v. *Freeman*, 3 T. R., 51.

In several instructions given to the jury, by the court below, the jury were told, in effect, that the inquiry concerning the fraud of the defendants need not be confined to

the specific allegations made in the pleadings. This was entirely wrong. No rule of law can possibly be better settled, and none is more necessary in the administration of justice, than that the plaintiff must recover upon his allegations, or not at all. If this were not so, it would be a mockery to require him to state a sufficient case in his complaint. Having thus stated his case, his proofs ought to be confined to it, and if he has proved a different case, however meritorious, he should be defeated.

There are various other instructions given and refused, concerning which questions are made before us, but we think that they are all disposed of by the foregoing opinion, and hence it is deemed unnecessary to remark upon them in detail.

The judgment is reversed, with costs, and the cause remanded, with directions to set aside all proceedings subsequent to the demurrer to the second paragraph of the reply, to sustain that demurrer, and to give leave to both parties, if desired, to amend their pleadings.

*A. C. Downey*, for appellants.

*D. S. Major*, for appellee.